IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHALENE R. MOORE                                                                                     PLAINTIFF

            V.                        Civil No. 2:22-cv-02147-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                      DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Michalene Moore, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for disabled widow's benefits ("DWB")[1] and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 402 (e), 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background**

Plaintiff protectively filed her applications for DWB and SSI on August 26, 2020[2], alleging disability since November 13, 2019[3], due to lupus, spinal fusion, Barrett's esophagus, and a building disk. (ECF No. 10, pp. 15, 89, 129, 148, 296-308, 323, 346-347). The Commissioner denied her applications initially and on reconsideration, and an administrative hearing was held

---

[1] To be eligible for DWB, an individual must meet age requirements, prove their relationship to a deceased wage earner who was fully insured, and prove that they are disabled. 42 U.S.C. § 402(e).
[2] Plaintiff filed a prior application for SSI that was denied by an ALJ on November 12, 2019. (ECF No. 10, pp. 58-70). Her request for review was denied by the Appeals Council on July 8, 2020. (*Id*. at 77-83).
[3] Plaintiff's alleged onset date of July 21, 2017, was amended to November 13, 2019, due to res judicata. (ECF No. 10, pp. 15, 36-37)

telephonically on September 21, 2021. (*Id*. at 34-99). Plaintiff was present for the hearing and represented by counsel.

On her alleged onset date, Plaintiff was 49 years old and possessed a high school education. (ECF No. 10, p. 25). She had no past relevant work ("PRW") experience, as she had been incarcerated for much of the last 18 years. (*Id*. at 25, 326, 335-342).

Administrative Law Judge ("ALJ"), Bill Jones, issued an unfavorable decision on October 19, 2021, concluding that her degenerative disk disease ("DDD"), left carpal tunnel syndrome ("CTS") and obesity were severe impairments. (ECF No. 10, p. 18). He found the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 20). Despite her impairments, ALJ Jones determined she retained the residual functional capacity ("RFC") to perform light work with occasional climbing, balancing, stooping, kneeling, crouching, crawling, overhead reaching bilaterally, and handling with her left upper extremity. (*Id*. at 20-21). With the assistance of a vocational expert ("VE"), the ALJ ultimately decided Plaintiff could perform work as a furniture rental clerk, conveyor line bakery worker, and housekeeper/cleaner. (*Id*. at 26).

The Appeals Council denied Plaintiff's request for review on July 8, 2022 (ECF No. 10, pp. 7-11), and she subsequently filed her Complaint (ECF No. 2) to initiate this action. Both parties have filed appeal briefs (ECF Nos. 12, 14), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.　　Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to

support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A claimant must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5), whether the claimant is able to perform other work in the national economy

given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider a claimant's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Plaintiff raises four issues on appeal: (1) whether the ALJ properly developed the record; (2) whether the ALJ erred at Step Two; (3) whether the ALJ conducted a proper subjective complaint analysis; and (4), whether the ALJ's RFC determination is supported by substantial evidence. (ECF No. 12, p. 2). Following a thorough review of the record, the undersigned agrees the ALJ's Step Two and RFC determinations lack substantial support in the record, as they fail to properly account for the Plaintiff's bilateral carpal tunnel syndrome ("CTS") status post-surgical correction and her neck impairment status-post cervical fusion.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. The ALJ's RFC determination must be based on all relevant evidence in the record, including medical records, observations of treating physicians and others, limitations resulting from factors such as pain, and the claimant's own descriptions of her limitations. *Id*. §§ 404.1545(a)(3), 416.945(a)(3); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) and *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). In assessing RFC, the ALJ must consider limitations resulting from all an individual's impairments, even those found to be non-severe. *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, (S.S.A. 1996) 1996 WL 37418, *5.

The record before this Court indicates that the Plaintiff suffered from bilateral CTS. On October 30, 2020, Dr. Candyce Westmoreland conducted a disability exam. (ECF No. 10, pp.

4

623-632). Among other notations, she documented decreased sensation and grip strength (4/5) in the left hand and assessed the Plaintiff with moderate handling, feeling, and grasping limitations due to bilateral hand numbness and weakness. Plaintiff's treating physician, Dr. Mirfat Bird, also completed an RFC assessment on February 23, 2021, indicating that the Plaintiff had "diminished sens[ation] in her arms and hands." (*Id*. at 641). She opined the Plaintiff could lift and carry less than 10 pounds; would be limited in her ability to push and pull with her upper extremities; could reach in all directions two hours out of an eight-hour workday; and could handle, finger, and grip less than two hours per day due to bilateral CTS.

In March 2021, the Plaintiff was evaluated by Collin Grimes, a physician's assistant at the Mercy Orthopedic Surgery Clinic. He noted paresthesias through all five digits on her right hand, exacerbated by Phalen's testing at both the carpal tunnel and ulnar nerve sites. (ECF No. 10, pp. 1066-1067, 1083-1084). X-rays also showed some early degenerative changes to the radiocarpal and carpometacarpal joints bilaterally. Orthopedic surgeon, Dr. Timothy Garlow, performed a right carpal tunnel and cubital release on June 10, 2021, and advised the Plaintiff to avoid heavy lifting and pushing/pulling with her right hand. (*Id*. at 977-980, 1063-1065, 1074-1075). Post surgical evaluations revealed good progress with some stiffness in the right elbow and wrist, and examination of her left upper extremity revealed persistent paresthesias through all five digits on her left hand, exacerbated by Phalen's testing at both the carpal tunnel and ulnar nerve sites. (*Id*. at 1061). PA Grimes prescribed range of motion exercises and discussed "restrictions," although he did not spell out those restrictions. Thereafter, Dr. Bird documented suboptimal control of her bilateral CTS symptoms, prompting her to refer the Plaintiff back to Dr. Garlow. (*Id*. at 1090-1099). On August 4, 2021, Plaintiff reported continued numbness in the upper extremities and hands. (*Id*. at 1060). Because she was scheduled for left carpal tunnel release with Dr. Garlow,

PA Grimes only examined her left upper extremity, noting a positive Tinel's test over the carpal tunnel and cubital sites of the left hand with ulnar and medial neuropathy, exacerbated by Tinel's testing. Although the Plaintiff contends that she underwent CT release surgery on her left upper extremity later that month, those records are not contained in the transcript before this court.

The only other RFC assessments contained in the record were completed by agency physicians in November 2020 and January 2021, prior to the Plaintiff's motor vehicle accident in February 2021 and her treatment for CTS. (ECF No. 10, pp. 99-103, 117-120, 139-144, 158-162). Doctors Elizabeth Berry and Jim Takach conducted independent reviews of the record and concluded the Plaintiff could perform light work with limited overhead reaching bilaterally and limited handling with the left hand. Dr. Takach further limited the Plaintiff to work requiring only occasional climbing, balancing, stooping, kneeling, crouching, crawling. (*Id*. at 139-144, 158-162).

In his RFC assessment, the ALJ found that the Plaintiff could perform light work with occasional posturals, occasional overhead reaching bilaterally, and occasional handling with the left upper extremity. (ECF No. 10, p. 21). He concluded that neither Dr. Westmoreland's nor Dr. Bird's opinions regarding Plaintiff's right-hand restrictions were persuasive because records indicated that her right extremity was progressing nicely after surgery. (*Id*. at 24). Further, he found Dr. Westmoreland's notation of moderate restrictions to be vague. The record does not, however, indicate that the Plaintiff's right extremity had completely healed or that she had no restrictions on its use. *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003) ("It is possible for a person's health to improve, and for the person to remain too disabled to work."). To the contrary, Dr. Bird noted that she had suboptimal control of her bilateral CTS status-post surgery. Despite this, the ALJ neither requested assessments from the Plaintiff's treating physicians nor ordered an

6

updated consultative exam to determine her exact limitations and abilities regarding her right hand, particularly her ability to handle, finger, and feel. The ALJ also failed to account for the Plaintiff's limitations in fingering and feeling with her left hand. Thus, his opinion lacks a sufficient logical bridge between the medical evidence and the RFC determination. *St. Clair v. Colvin*, 2013 WL 4400832, at *2 (W.D. MO., Aug. 14, 2013). Therefore, remand is necessary to allow the ALJ to reconsider the severity of these impairments and the Plaintiff's RFC. To aid him in doing so, on remand, the ALJ is directed to order a consultative orthopedic examination, complete with an RFC assessment, to determine the Plaintiff's true ability to use her hands for work-related activities.

There also appears to be a discrepancy regarding the vocational expert's testimony. The VE explained that that the Dictionary of Occupational Titles' reaching, handling, and fingering requirements referred only to bilateral reaching, handing, and fingering. (ECF No. 10, p. 47). However, when asked whether reducing the Plaintiff's ability to handle to less than occasional would influence the light jobs available, the expert's response is partially inaudible. (*Id*. at 48). As this testimony is crucial to the ALJ's determination that jobs exist in significant numbers in the national economy the Plaintiff can still perform, on remand, the ALJ is directed to make certain that the entirety of the vocational expert's testimony is audible and that the Plaintiff has an opportunity to cross examine the expert, should she choose to do so.

Additionally, the record reveals that the Plaintiff underwent cervical fusion in 2017, prior to the relevant period. She complained of neck pain throughout the relevant period. An MRI of her cervical spine on December 16, 2019, revealed anterior fusion at the C5, C6, and C7 levels, with mild disk space narrowing and degenerative endplate change with a slight disk bulge. (ECF No. 10, pp. 513-515, 578-589, 983-984). Thereafter, Dr. Bird consistently noted tenderness, swelling, pain and spasm in her cervical spine. (*Id*. 475-492, 504-513, 547 -564, 578-586). In

February 2021, the Plaintiff was involved in a motor vehicle accident, resulting in a whiplash injury to her neck. (*Id*. at 872-877, 895-897, 900-902). CT scans performed in the emergency room revealed hypertrophic osteoarthritic changes of the facet joints in the cervical spine; a disk osteophyte ridge at the C6-7 level; and mild kyphosis of the thoracic spine with areas of mild bony neural foraminal narrowing. (*Id*. at 895, 897). Two days later, Dr. Bird completed an RFC assessment indicating the Plaintiff could frequently lift/carry less than 10 pounds with limited posturals and manipulatives due to diagnoses of DDD with cervical root compression, bilateral CTS, and lumbar radiculopathy. Given these findings, on remand, the ALJ is also directed to reevaluate the evidence concerning the Plaintiff's neck impairment and its impact on her ability lift/carry and use her upper extremities for work-related activities.

## IV. Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of September 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE